IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:21-CV-146-D

| | | |
|---|---|---|
| JEFFREY BALLARD and<br>SHERRY BALLARD, | )<br>)<br>) | |
| Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | **ORDER** |
| STATE FARM FIRE AND<br>CASUALTY COMPANY, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

On August 23, 2021, Jeffrey and Sherry Ballard ("the Ballards" or "plaintiffs") filed a complaint in Carteret County Superior Court against State Farm Fire and Casualty Company ("State Farm" or "defendant") seeking a declaratory judgment and damages for breach of contract, unfair and deceptive trade practices, and common law bad faith [D.E. 1-1]. On October 4, 2021, State Farm removed the action to this court [D.E. 1]. On July 31, 2023, State Farm moved to exclude Ron Hicks and Chris Bolin from providing expert opinions [D.E. 34], moved for summary judgment [D.E. 36], and filed memoranda in support of both motions [D.E. 35, 39], a statement of material facts [D.E. 37], and an appendix [D.E. 38]. On July 31, 2023, the Ballards moved for summary judgment [D.E. 40] and filed a statement of material facts [D.E. 41], exhibits [D.E. 41-1 to 41-15], and a memorandum in support [D.E. 42]. On September 19, 2023, State Farm responded to the Ballards' statement of material facts [D.E. 44] and responded in opposition to the Ballards' motion for summary judgment [D.E. 45]. On September 20, 2023, the Ballards withdrew expert

designations of Ron Hicks and Chris Bolin [D.E. 46],[1] responded to State Farm's statement of material facts [D.E. 47], and responded in opposition to State Farm's motion for summary judgment [D.E. 48]. As explained below, the court denies as moot State Farm's motion to exclude, denies in part and grants in part State Farm's motion for summary judgment, and denies the Ballards' motion for summary judgment.

I.

The Ballards own a home in Morehead City, North Carolina ("the residence"). See Pls.' Statement of Material Facts ("PSMF") [D.E. 41] ¶ 1; Def.'s Opposing Statement of Material Facts ("DOSMF") [D.E. 44] ¶ 1. From June 4, 2018, to June 4, 2019, State Farm insured the residence under policy number 33-KM-9515-2 ("the Policy"). See PSMF ¶ 2; DOSMF ¶ 2 & n.1. The Policy provided for replacement-cost benefits, which entitled the Ballards to the cost of labor and materials for a claim of a covered loss. See PSMF ¶ 3; DOSMF ¶ 3.

On September 14, 2018, Hurricane Florence hit North Carolina. See PSMF ¶ 4; DOSMF ¶ 4. Hurricane Florence caused some water intrusion into the residence and damaged the residence. See PSMF ¶ 4; DOSMF ¶ 4. On September 17, 2018, the Ballards reported the damage to State Farm, and State Farm assigned claim number 33-5822-Z78 to the residence ("the Claim"). See PSMF ¶ 5; DOSMF ¶ 5. State Farm determined that the Policy covered losses that Hurricane Florence caused, including the Claim. See PSMF ¶ 6; DOSMF ¶ 6. On October 12, 2018, State Farm sent field adjuster Jovan Marjanovic ("Marjanovic") to inspect the residence. See PSMF ¶ 10; DOSMF ¶ 10. Marjanovic took photos of the residence, which included plastic barriers in the walls called "vapor barriers." See PSMF ¶ 11; DOSMF ¶ 11. State Farm assigned William Oakes

---

[1] In light of plaintiffs' withdrawal of expert designations, the court denies as moot State Farm's motion to exclude Hicks and Bolin from providing expert opinions [D.E. 34].

2

("Oakes") as the claims specialist for the Claim. See PSMF ¶ 12; DOSMF ¶ 12. Oakes reviewed and edited Marjanovic's estimate, which included roof reshingling and other estimates from the Ballards' contractor Alan Bialkowski ("Bialkowski"). See PSMF ¶¶ 12, 14; DOSMF ¶¶ 12, 14. State Farm continued to adjust the Claim for interior damage through early 2019. See PSMF ¶ 13; DOSMF ¶ 13. In February 2019, State Farm sent field adjuster Wayne Dust to inspect the residence's windows, doors, and deck in response to Bialkowski's submissions. See PSMF ¶ 15; DOSMF ¶ 15. Dust accepted Bialkowski's estimate to repair the residence's windows, doors, and deck. See PSMF ¶ 16; DOSMF ¶ 16.

The Ballards hired a public adjuster after State Farm told the Ballards they must resolve the Claim within two years of Hurricane Florence. See PSMF ¶¶ 18–19; DOSMF ¶¶ 18–19. On May 18, 2021, Chris Bolin ("Bolin"), a licensed public adjuster, told State Farm that his company, StormPro, represented the Ballards. See PSMF ¶ 20; DOSMF ¶ 20. Bolin requested a copy of State Farm's estimates, payment history for the Claim, and a copy of the Policy. See PSMF ¶ 20; DOSMF ¶ 20. State Farm assigned desk adjuster George Aguirre ("Aguirre") to the Claim, and Aguirre told Bolin that the Ballards had a two-year time limit to complete repairs and request replacement-cost benefits. See PSMF ¶ 22; DOSMF ¶ 22. On June 8, 2021, Aguirre sent Bolin a generic policy that indicated a two-year statute of limitations for claims. See PSMF ¶ 25; DOSMF ¶ 25. In fact, the Policy's applicable statute of limitations for the Claim was three years. See Compl. [D.E. 1-1] 61; cf. PSMF ¶¶ 24, 32; DOSMF ¶¶ 24, 32.

On July 30, 2021, Bolin sent Aguirre StormPro's estimate to repair damage to the residence. See [D.E. 38-15] 32. On August 3, 2021, Aguirre told the Ballards that the correct statute of limitations was three years and assigned another field adjuster to perform a third inspection. See [D.E. 38-16] 5, 7.

3

On August 9, 2021, Bolin submitted a Sworn Proof of Loss to State Farm that included an estimate for replacing the residence's drywall. See PSMF ¶ 30; DOSMF ¶ 30; Def.'s Statement of Material Facts ("DSMF") [D.E. 37] ¶ 53; Pls.' Resp. to Def.'s Statement of Material Facts ("PR") [D.E. 47] ¶ 53. StormPro's estimate totaled $240,593.53. See DSMF ¶ 52.[2] On August 17, 2021, State Farm sent field adjuster Don Taylor ("Taylor") to inspect the residence with Bolin. See PSMF ¶ 31; DOSMF ¶ 31. Bolin and Taylor discussed the residence's vapor barrier, which applicable building codes required when the residence was built. See [D.E. 38-8] 18; [D.E. 38-7] 112.

The Ballards and State Farm disagreed about coverage for the replacement of all drywall in the residence because of the vapor barrier. Compare DSMF ¶ 8, with PR ¶ 8. StormPro contended the vapor barrier exacerbated and concealed water damage in the residence from Hurricane Florence, necessitating more repairs. See, e.g., [D.E. 38-15] 35. State Farm contended that "any moisture issues related to" the vapor barrier fell outside the scope of the "direct physical loss due to the hurricane." [D.E. 38-8] 14. State Farm contended that "[i]f there is a manufacturer's defect . . . related to that drywall on the vapor barrier that would cause it to retain moisture . . . the [P]olicy specifically excludes that type of loss." Id. at 6–7. State Farm did not pay the full estimate that Bolin and StormPro submitted. See id. at 19. In total, State Farm conducted three inspections of the

---

[2] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); see Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (unpublished); Fed. R. Civ. P. 56(e)(2). The Ballards' response statement of material facts only controverts some paragraphs of State Farm's statement of material facts. Thus, the Ballards have admitted the remainder.

4

residence and issued payments totaling $66,561.88. See DSMF ¶ 5; PR ¶ 5. The Ballards seek payment in full for StormPro's $240,593.53 estimate. See Compl. 12.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is]

5

insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

In the Ballards' first claim, they seek a declaration "that the Claim is a covered loss under the Policy and that [State Farm owes] $240,592.53 to [the Ballards] on the Claim." Compl. 7–8. In the Ballards' second claim, they allege breach of contract based on State Farm's alleged failure "to provide the benefits, coverage, and payments due [under the Policy] to [the Ballards]." Id. at 8. Both claims require the court to determine if State Farm breached the Policy by refusing to pay for certain repairs to the residence after Hurricane Florence.

Because this dispute requires the court to interpret a North Carolina insurance contract, the court applies North Carolina substantive law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an

6

issue, this court "should not create or expand a state's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (cleaned up); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Where the relevant facts are not disputed, construing the policy is an issue of law. See Parker v. State Cap. Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963). "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting "an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 254, 63 S.E.2d 538, 540–41 (1951). A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975); Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790.

The insurance company selected the words in the insurance policy, and a court must resolve "any ambiguity or uncertainty as to their meaning ... in favor of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co., 276 N.C. at 354, 172 S.E.2d at 522; see Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967); Mills v. State

7

Life & Health Ins. Co., 261 N.C. 546, 553, 135 S.E.2d 586, 590 (1964); Jones v. Pa. Cas. Co., 140 N.C. 262, 264, 52 S.E. 578, 579 (1905).

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term, a court gives "nontechnical words . . . their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant v. Emmco Ins. Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). Moreover, courts give a term in an insurance policy the same meaning throughout the various coverages unless the policy clearly expresses an intent to give different meanings to the term within the different coverages in the same policy. See Grant, 295 N.C. at 54, 243 S.E.2d at 904; Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 124 N.C. App. 232, 244, 477 S.E.2d 59, 67 (1996).

The insured bears the burden to prove coverage. See N.C. Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178, 182, 711 S.E.2d 114, 116–17 (2011); Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966); Metric Constructors, Inc. v. Indus. Risk Insurers, 102 N.C. App. 59, 61–62, 401 S.E.2d 126, 128, aff'd, 330 N.C. 439, 410 S.E.2d 392 (1991) (per curiam). "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." McAbee, 268 N.C. at 328, 150 S.E.2d at 497.

Exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. See Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 346–47, 152 S.E.2d 436, 440–41 (1967); Eatman Leasing, Inc. v. Empire Fire &

8

Marine Ins. Co., 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001). "[E]xclusions from coverage are construed strictly so as to provide coverage which would otherwise be afforded by the policy." Marriott Fin. Servs., Inc., 288 N.C. at 144, 217 S.E.2d at 565; see Wachovia Bank & Tr. Co., 276 N.C. at 355, 172 S.E.2d at 522–23.

The Policy covers "[t]he dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling," i.e., the residence. [D.E. 49] 12. The Policy "insure[s] against direct physical loss to" the residence. Id. at 19. The Policy does not cover any loss caused by "[m]echanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself." Id. at 20. "As a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded." Avis v. Hartford Fire Ins. Co., 283 N.C. 142, 150, 195 S.E.2d 545, 549 (1973). An insurer can rebut this general rule through the use of an "anti-concurrent causation" clause, which "excludes coverage for certain losses, regardless of whether the loss arises from more than one cause or sequence of events." Builders Mut. Ins. Co. v. Glascarr Props., Inc., 202 N.C. App. 323, 326, 688 S.E.2d 508, 511 (2020). The Policy's anti-concurrent causation clause does not embrace the Policy's "latent defect" exclusion; therefore, the general rule applies. See [D.E. 49] 23–25. State Farm determined that any loss that Hurricane Florence caused was a covered loss. See DSMF ¶ 6.

The parties dispute whether certain damage to the residence's drywall resulted from a covered loss. Compare [D.E. 39] 13–18 ("State Farm determined that replacement of all drywall due to a manufacturing defect or installation defect of a plastic vapor barrier from the original construction of the Property was not considered part of a hurricane loss and was not covered by the Policy."), with [D.E. 42] 9–13 ("Defendant admits that the Claim made by Plaintiffs was a covered

9

loss.... Defendant, at no point during the adjustment of this Claim, made any clear determination that any part of the loss reported by Plaintiffs was excluded from coverage.").

In support of their arguments, both parties have retained experts. See, e.g., [D.E. 38-19, 41-15]. State Farm's expert, professional engineer Michel Joseph Shahid ("Shahid"), visually inspected the residence, took moisture and humidity measurements of the residence, and investigated weather data from Hurricane Florence. See [D.E. 38-19] 61–63. Shahid opined that Hurricane Florence did not cause moisture in the residence's walls that would necessitate removing all of the drywall. See, e.g., id. at 25 (testifying it was not "reasonable to consider that you had widespread saturation of every wall on this house, every elevation, all three floors" and stating that "the possibility of water getting into the wall cavities . . . to the extent that [StormPro is] describing or trying to allege is really beyond a reasonable degree of engineering certainty"), 71 ("The Storm Pro Consultant scope of repair and estimate goes well beyond the damages that can reasonably be attributed to the storm .... [T]here is no evidence that hurricane force winds increased moisture within the wall assemblies ....").

The Ballards' expert, professional engineer Toni Cornelius ("Cornelius"), testified that she dislikes vapor barriers generally because they can exacerbate damage from water intrusion. See [D.E. 38-20] 8. Cornelius opined that "[i]f you have a wall where you know water intrusion came through, bulk water, when you replace that drywall, you should take your vapor barrier out." Id. Cornelius also inspected the residence and opined that "[d]ue to the interior vapor barrier, the water intrusion through exterior walls becomes trapped and unable to dry out." Id. at 27. Cornelius noted that the residence "had significant water intrusion through the exterior envelope" which, due to the vapor barrier, "can be damaging the exterior walls without apparent visual damage." Id. During an inspection, Cornelius "cut into . . . the hall area . . . and when [she] removed the drywall there was

10

microbial growth on the back of the interior vapor barrier in that location, which [told Cornelius] that water, which may be dry now, had been trapped for enough time to start creating microbial growth." Id. at 13. Cornelius attributed the damage to Hurricane Florence. See id. at 26–27. Cornelius recommended inspecting the drywall throughout the residence and removing the drywall as needed. See id.

On November 30, 2018, the North Carolina Department of Insurance stated that "from 1968 through 1997 [, the North Carolina Residential Codes] required a vapor retarder . . . on the interior of walls." [D.E. 38-7] 112. Thus, "[i]n adjusting hurricane damage claims for homes within the 1968–1997 applicable residential code period, it is important that the inside of the walls be checked more carefully than newer construction to ensure that moisture hasn't seeped into walls that will eventually result in mold and interior wall rot." Id. Cornelius testified that she already disliked vapor barriers and this memorandum "confirme[ed] an opinion that [she] held before seeing the memo." [D.E. 38-20] 8.

The first two claims involve a battle of experts. If Shahid is right, the Policy does not cover all repairs that the Ballards seek. If Cornelius is right, the Policy does cover the damage as a "direct physical loss" to the residence. [D.E. 49] 19. A genuine issue of material fact exists concerning causation and damages. Thus, the court denies both motions for summary judgment on the Ballards' first two claims. See, e.g., Dodd v. Auto. Ins. Co. of Hartford, Nos. 2:05 CV 216, 2:05 CV 217, 2:05 CV 218, 2007 WL 203983, at *5 (W.D.N.C. Jan. 24, 2007) (unpublished).

The Ballards' third claim is for unfair and deceptive trade practices. See Compl. ¶¶ 37–44. N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action. Nonetheless, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under N.C. Gen. Stat. § 75-1.1. See, e.g., Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins.

11

Co., No. 7:12-CV-107, 2013 WL 6080191, at *8–9 (E.D.N.C. Nov. 19, 2013) (unpublished). Unfair and deceptive trade practices claims require: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused injury to plaintiffs. See Waterford I Cary Park Condo. Homeowners Ass'n, v. Nationwide Prop. & Cas. Ins. Co., ___ F. Supp. 3d ___, 2023 WL 2959868, at *3 (E.D.N.C. Apr. 14, 2023); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007).

A "mere breach of contract, even if intentional, is not an unfair or deceptive act." Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684–85 (E.D.N.C. 2019) (collecting cases); see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Respess v. Crop Prod. Servs., Inc., No. 4:15-CV-176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); SciGrip, 373 N.C. at 427, 838 S.E.2d at 347; Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); Mitchell v. Linville, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). To prove an unfair and deceptive trade practices claim, a party must show "substantial aggravating circumstances." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (citation omitted). Generally, substantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Stack v. Abbott Lab'ys, Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

12

In their complaint, the Ballards allege State Farm engaged in the following unfair and deceptive acts: (1) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (2) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (4) failing to affirm or deny coverage of claims within a reasonable time after estimates have been submitted; (5) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; (6) compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; and (7) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled. See Compl. ¶ 39.

In response to interrogatories, the Ballards specified State Farm's allegedly unfair and deceptive practices: (1) State Farm rushed the first inspection, which the Ballards felt was not "thorough enough to document the damage caused by Hurricane Florence"; (2) State Farm's payouts to the Ballards were "significantly lower than the contractor's invoices"; (3) State Farm took "several weeks" to respond to the Ballards' calls, voicemails, and emails; (4) State Farm "frustrated" the Ballards by re-assigning new adjusters to the Claim "which created countless delays in its adjustment"; (5) the Ballards "received only $58,104.91 to restore their Property to the condition it was in prior to ... Hurricane Florence" and were unable to "obtain additional funds" from State Farm; (6) Aguirre told Bolin that the statute of limitations to bring a claim for damage to the residence under the Policy had expired; (7) Aguirre initially provided Bolin with a copy of a generic policy that "indicated that suit must be filed within two years of the date of the event that caused the damage"; (8) Bolin "followed-up with [Aguirre] for weeks without a response" before Aguirre

13

provided the Policy to Bolin which allowed the Ballards to file a lawsuit within three years of the date of the loss; and (9) the Ballards had not received a response to their August 9, 2021 Proof of Loss or Taylor's inspection on August 17, 2021, by the time they filed suit on August 23, 2021. [D.E. 38-21] ¶ 7.

As for Aguirre's representations regarding the applicable statute of limitations, to prove a claim based on misrepresentation, the Ballards must demonstrate they actually relied on the misrepresentation and suffered an actual injury as a result. See N.C. Gen. Stat. § 58-63-15(11)(a); Barbour, 361 F. Supp. 3d at 575; Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 649 (M.D.N.C. 2002). Bolin testified he had a correct copy of the Policy demonstrating the three-year time limitation for claims by June 1, 2021, which he got from the Ballards. See [D.E. 38-15] 5, 7. Jeffrey Ballard testified he knew the statute of limitations was three years despite State Farm's representations to the contrary. See [D.E. 38-10] 30, 33. Moreover, State Farm continued to adjust the Claim even after the statute of limitations expired. See, e.g., [D.E. 38-15] 22. Furthermore, the Ballards seek damages on this UDTPA claim "in an amount equal to the benefits due under the Policy." Compl. ¶ 42. This UDTPA claim illustrates that the dispute in this case is about causation, not the statute of limitations. Accordingly, the Ballards fail to show actual reliance or injury as a result of any alleged misrepresentation. See, e.g., Barbour, 361 F. Supp. 3d at 575; Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 212, 675 S.E.2d 46, 54 (2009).

As for the promptness of State Farm's communications, the Ballards focus on State Farm's responses (or lack thereof) to "communications StormPro made on Plaintiffs' behalf." [D.E. 42] 15; see N.C. Gen. Stat. § 58-63-15(11)(b). On May 18, 2021, StormPro first contacted State Farm. See PSMF ¶ 20; DOSMF ¶ 20. By June 1, 2021, Bolin received a response, but Bolin accidentally deleted the voicemail. See [D.E. 38-15] 28. On June 8, 2021, Aguirre and Bolin exchanged emails,

14

and on June 14, 2021, Bolin told Aguirre that Bolin would "put[] together a supplement estimate on this claim and submit[] it." Id. at 30–31. The two did not communicate again until Bolin submitted StormPro's estimate on July 30, 2021. See id. at 32. On August 3, 2021, Aguirre responded. See [D.E. 38-16] 11. On August 17, 2021, Bolin and Taylor inspected the residence. See PSMF ¶ 31; DOSMF ¶ 31. The Ballards complain of Taylor's unresponsiveness after this inspection. See, e.g., [D.E. 42] 16–17. Bolin, however, emailed Taylor once on August 18, 2021 to request a copy of the Policy, and Taylor replied that day. See [D.E. 38-15] 15, 94. On August 23, 2021, the Ballards filed this lawsuit. See id. at 96–97; Compl. 12.

The Ballards complain about Taylor's unresponsiveness after they filed the lawsuit, see, e.g., [D.E. 42] 16–17; [D.E. 48] 20–21, but in doing so they improperly seek to amend their complaint at summary judgment. See Compl. ¶ 28 ("As of the date of the filing of this Complaint, Plaintiffs have not received any correspondence related to the submission of their Sworn Proof of Loss or the August 17, 2021 inspection."); Carr v. United States, ___ F. Supp. 3d ___, 2023 WL 3635625, at *4 (E.D.N.C. May 24, 2023) (stating that a plaintiff "cannot amend her claims or amend her complaint via summary judgment briefing" and collecting cases). Accordingly, the Ballards are left with their complaint that State Farm employees generally responded to the Ballards' communications within a week. Such response times are reasonable. See, e.g., Labudde v. Phoenix Ins. Co., No. 7:21-CV-197, 2022 WL 2651846, at *8 (E.D.N.C. July 8, 2022) (unpublished); Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771, 2018 WL 1473427, at *6 (E.D.N.C. Mar. 24, 2018) (unpublished); Meadlock v. Am. Family Life Assurance Co., 221 N.C. App. 669, 729 S.E.2d 127, 2012 WL 2891079, at *7 (July 17, 2012) (unpublished table decision).

As for the reasonableness of State Farm's investigation, the Ballards contend "that Defendant was aware of the potential moisture buildup issues that vapor barriers can cause within walls if left

15

unchecked"; therefore, State Farm's "adjusters should have examined the residence's vapor barriers and walls as part of their inspections." [D.E. 42] 18; see N.C. Gen. Stat. § 58-63-15(11)(d). State Farm was aware the residence had a vapor barrier. See PSMF ¶ 11; DOSMF ¶ 11. Neither the Ballards nor their contractors, however, claimed the vapor barrier concealed or caused damage to the residence related to Hurricane Florence before StormPro's estimate on July 30, 2021. See, e.g., [D.E. 38-8] 14–15. Once StormPro notified State Farm about the vapor barrier issue, State Farm assigned an adjuster to re-inspect the residence, discussed the vapor barrier with Bolin and an outside contractor, and retained an engineer to inspect the residence. See, e.g., [D.E. 38-7] 17; [D.E. 38-15] 14–15; [D.E. 38-16] 5, 7. In other words, State Farm knew the residence had a vapor barrier but did not investigate further until the Ballards claimed the vapor barrier was part of the covered loss in the Claim. Such an investigation is reasonable. See, e.g., City Grill Hosp. Grp., Inc. v. Nationwide Mut. Ins. Co., No. 5:12-CV-610, 2014 WL 1429552, at *6 (E.D.N.C. Apr. 14, 2014) (unpublished).

As for the litigation, the Ballards contend State Farm forced the Ballards to institute litigation through State Farm's "failure to properly investigate the Claim," "failure to properly value and pay the Claim," "misrepresentation of certain Policy provisions," and "failure to timely communicate with [the Ballards] about any of its coverage position or decision." [D.E. 42] 19. As discussed, State Farm acted reasonably while investigating and communicating about the Claim. Moreover, the relevant statute prohibits insurers from compelling insureds "to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g) (emphasis added). Claims "under this subsection are premature when brought before liability has been determined." Jones v. Crum & Forster Specialty Ins. Co., No. 7:22-CV-25, 2023 WL 6224623, at *9 (E.D.N.C. Sept. 25,

16

2023) (unpublished) (quotation and alteration omitted); see Elliott v. Am. States Ins. Co., 883 F.3d 384, 398 (4th Cir. 2018).

A genuine issue of material fact exists concerning whether the Policy covers the full Claim. This genuine issue of material fact defeats the Ballards' claim of an unfair or deceptive act to the extent the Ballards contend that State Farm failed to properly value and pay the Claim. See, e.g., Central Carolina Bank & Tr. Co. v. Sec. Life of Denver Ins. Co., 247 F. Supp. 2d 791, 801–02 (M.D.N.C. 2003) ("To accept Plaintiff's position that Defendant violated Sections 58-63-15(11)(f) and (g) because Defendant refused to pay the full . . . benefit that the court subsequently determined Defendant was liable for would make an insurer strictly liable for damages any time its pre-trial assessment of a claim proved to be incorrect."); 14 George J. Couch, et al., Couch on Insurance § 204:21 (3d ed. 1999) ("[T]he insurer should not be held liable for extracontractual damages where there is a legitimate controversy as to whether benefits are due or the amount of such benefits."). Thus, even viewing the record in the light most favorable to the Ballards, State Farm's actions do not rise to the level of an unfair or deceptive trade practice. Accordingly, the court grants summary judgment to State Farm on the Ballards' third claim.

The Ballards' fourth claim is for common law bad faith. See Compl. ¶¶ 45–49. Every contract contains "an implied covenant of good faith and fair dealing." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted). Under the covenant, "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Robinson v. Deutsche Bank Nat'l Tr. Co., No. 5:12-CV-590, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (unpublished) (quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637, 2016 WL

17

3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (cleaned up); see Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996); Thomas v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000), aff'd, 18 F. App'x 147 (4th Cir. 2001) (per curiam) (unpublished).

North Carolina law recognizes "a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contracts for funeral services and insurance." Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019) (quotation omitted); Ada Liss Grp. (2003) v. Sara Lee Corp., No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010) (unpublished). "Outside such circumstances, actions for breach of good faith fail." Ada Liss Grp. (2003), 2009 WL 3241821, at *13 n.10. In the insurance context, a claim for breach of the covenant of good faith and fair dealing requires three elements: "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." LRP Hotels of Carolina v. Westfield Ins. Co., No. 4:13-CV-94, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished) (quotations omitted); see, e.g., Gandecha v. Metro. Prop. & Cas. Ins. Co., No. 5:13-CV-688, 2014 WL 4243797, at *5 (E.D.N.C. Aug. 26, 2014) (unpublished).

"[W]hen an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer." Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 239 (4th Cir. 2001) (per curiam) (unpublished); see Universal Underwriters Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018). Bad faith does not encompass an "honest disagreement or innocent mistake."

18

Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 421, 424 S.E.2d 181, 185 (1993) (quotation omitted); see Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985). Aggravated conduct includes "fraud, malice, gross negligence, [and] insult" as well as actions denying coverage "willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Universal Underwriters Ins., 334 F. Supp. 3d at 736 (quotation omitted); see Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185; Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 466 (M.D.N.C. 2013).

A genuine issue of material fact exists concerning whether the Policy covers the full Claim. "The fact that Defendant paid a portion of Plaintiff's claim while disputing the remainder of the claim is insufficient to establish that Defendant recognized the entirety of the claim for purposes of alleging a bad faith claim." Barnett v. State Auto Prop. & Cas. Ins. Co., No. 2:14cv34, 2015 WL 276512, at *3 (W.D.N.C. Jan. 22, 2015) (unpublished); see Topsail Reef Homeowners Ass'n, 11 Fed. App'x at 230–31; Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indem. Co. of Conn., No. 1:12cv157, 2012 WL 6641901, at *2–4 (W.D.N.C. Dec. 20, 2012) (unpublished); Blis Day Spa, LLC v. Hartford Ins. Group, 427 F. Supp. 2d 621, 632–33 (W.D.N.C. 2006). Accordingly, the court grants State Farm's motion for summary judgment on the Ballards' fourth claim and denies the Ballards' motion for summary judgment on this claim. See, e.g., Topsail Reef Homeowners Ass'n, 11 Fed. App'x at 238–39; City Grill Hosp. Grp., Inc., 2014 WL 1429552, at *5.

III.

In sum, the court DENIES AS MOOT defendant's motion to exclude [D.E. 34], DENIES IN PART defendant's motion for summary judgment [D.E. 36] on plaintiffs' first and second claims, GRANTS IN PART defendant's motion for summary judgment on plaintiffs' third and fourth claims, and DENIES plaintiffs' motion for summary judgment [D.E. 40]. The parties shall engage in a

19

court-hosted settlement conference with United States Magistrate Judge James E. Gates. If the case does not settle, the parties shall submit proposed trial dates.

SO ORDERED. This 2 day of February, 2024.

*J. Dever*
JAMES C. DEVER III
United States District Judge